[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 375 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 376 
We are here concerned with both an appeal and a cross-appeal in this estate matter. Louie M. Byrd, as executor of the estate of Rudolph Luis Balke, deceased, (hereinafter referred to as executor or Byrd) has appealed from that portion of an order and amended decree of distribution entered in the superior court of Maricopa County on September 30, 1947, directing the payment out of the funds of the estate of attorneys' fees in the amount of $7,500 to the firm of Rawlins, Davis, Christy and Kleinman, they having represented the acting Consul General of the Republic of Poland, who appeared on behalf of certain Polish Nationals, legatees under the will of said decedent. The cross-appeal was initiated by appellee Stefan Rogozinski, as said acting Polish Consul, from another portion of the same order and decree. Rogozinski having been relieved of his *Page 377 
official duties, this court granted a motion to substitute Marian B. Cieplak, Consul General, in his place.
There is before us no reporter's transcript of the testimony taken at the hearings held in the court below. The record here consists merely of those minutes, pleadings, and exhibits which the parties deemed necessary for presentation of their respective appeals. By stipulation these documents were incorporated into a consolidated abstract of record.
Executor's Appeal.
We shall first consider and determine the matters raised under the executor's appeal. The sole assignment of error and single proposition of law set forth by executor Byrd are as follows:
"Assignment of Error
"The Court erred in ordering the appellant to pay to the attorneys for the appellee the sum of $7,500.00 from the assets of the estate.
"Legal Propositions Relied On
"The estate of a decedent in process of administration is not liable for attorney's fees incurred by individuals, where the attorneys are not employed by the executor or administrator, but are employed by the individuals.
"Proposition of Law
"Costs of administration are regulated by Section 38-1402, A.C.A. 1939, and include `reasonable fees paid or contracted to be paid to attorneys at law for services to him (the executor)'. This section excludes payment of attorney's fees out of the estate to attorneys not employed by the executor."
The major portion of the Consul General's answering brief is devoted to his contention that the appeal taken by the executor should be dismissed for the reasons that (a) the assignment of error is insufficient; (b) the executor is not a "party aggrieved" and hence has no right to appeal under the statute, section 21-1701, A.C.A. 1939; and (c) as no reporter's transcript was filed the court must assume the evidence, if here, would support the action of the trial court in allowing the attorney's fees in question.
Directing our attention to the assignment of error presented by the executor, it is readily seen that as drawn it succinctly states the error complained of, and if we were to substitute the words "for the reason that" in lieu of the title given the second paragraph, i.e., "Legal Propositions Relied On," there would be presented a proper assignment. It would then contain both the ground of error relied upon and the particular ruling complained of, in full compliance with our Rule 12. It is to be noted that in addition to these first two paragraphs just quoted a proposition of law is separately stated. Our rules requiring the proper framing of both assignments of error and propositions of law are designed to advise the opposite party and this court what questions are to be considered for decision on the appeal. *Page 378 
In re Hesse's Estate, 65 Ariz. 169, 177 P.2d 217. We confess that we have experienced no difficulty, nor does it appear that opposing counsel did, in detecting precisely the matters of which the executor is complaining on his appeal.
The executor, during the period of administration, holds the property of the estate as a trustee and proper representative of all parties interested therein, and it is his duty to protect the assets of the estate. In re Estate of Tamer, 20 Ariz. 228,179 P. 643; Schouler on Wills, Executors and Administrators, sixth edition, volume 3, section 1397. As a general proposition of law, an executor may, where the interests of the estate are involved, sue and be sued, and this includes the right of appeal from probate judgments and orders specified in section 21-1702, subsection 3, A.C.A. 1939. 34 C.J.S., Executors and Administrators, § 688; 4 C.J.S., Appeal and Error, § 193. The Consul contends, however, that the executor is not aggrieved by this order of the probate court allowing fees to the former's attorneys from the residuary estate for the reason that the estate was then ready to be closed, all creditor's claims, taxes, expenses of administration, and legacies had been paid, and ample funds remained to pay said fees. Reliance is had upon the rule that an executor as such is not a party aggrieved by a decree of distribution determining the parties to whom an estate should be distributed. See Brought v. Howard, 30 Ariz. 522, at page 534,249 P. 76, 48 A.L.R. 1347; In re Maher's Estate, 195 Wn. 126,79 P.2d 984, 117 A.L.R. 91; In re Babb's Estate, 200 Cal. 252,252 P. 1039. We fail to see the applicability of this rule to the instant problem as the Consul's attorneys are neither heirs at law nor distributees under the will. Their claim for services, if allowed, would be chargeable to expenses of administration and would deplete the assets available for distribution to the extent of the amount approved. We hold that the executor had a right to call in question the action of the lower court ordering the payment of these fees for the reason that the personal representative is not required to do an act which the court is not authorized by law to order him to do. In re Forney's Estate,44 Nev. 279, 194 P. 331; Denison v. Jerome, 43 Colo. 456,96 P. 166; 1 Bancroft's Probate Practice, section 106; 4 C.J.S., supra, § 193.
It is clear that the appeal of the executor from the order of the lower court is not dependent upon a reporter's transcript of the evidence, for his position is that the trial court erred as a matter of law in allowing attorneys' fees to be paid from the estate for services to the Consul. And it is immaterial to such a position whether or not such services were beneficial to the estate. A different situation would be presented if the executor was appealing from the order for the reason that there was insufficient evidence to support it. *Page 379 
Primock v. Wilson, 55 Ariz. 192, 100 P.2d 180; Hughes v. Young,58 Ariz. 349, 120 P.2d 396, 138 A.L.R. 943. The governing rule in such a situation as this was well expressed in Lasnier v. Martin,102 Kan. 551, 171 P. 645, 646: "The appellee raises a preliminary question by moving to dismiss this appeal because no transcript of the evidence was provided by the appellants. But unless the questions involved in the appeal require a review of the evidence or of the rulings of the court thereon, a transcript would serve no purpose. Failure to provide a transcript does not necessarily require the dismissal of an appeal; it merely excludes from the scope of the review those features of the lawsuit dependent thereon. * * *" See Reilly v. Board of Com'rs, 29 Idaho 212,158 P. 322.
Under the circumstances here, the duty of presenting the transcript was upon the Consul, it being necessary only to support his theory that the estate was benefited by the services of his attorneys. He had statutory authorization for supplementing the designation of record on appeal made by the executor by including therein the transcript in question. Section 21-1819, A.C.A. 1939. By failing to do so he in effect waived his right to rely upon the evidence contained in said transcript, and certainly cannot now be heard to complain that it is not a part of this record.
We conclude that there is no merit to the Consul's contention that the appeal of the executor should be dismissed for any of the reasons relied upon.
The crux of the executor's appeal lies in his claim that the lower court had no authorization in law to grant fees to attorneys representing certain legatees. Speaking generally, the rule is that attorneys' fees can be collected only when such fees are specifically allowed by statute or have been contracted for by the parties. Of course, courts of equity may and frequently do order an attorney's fee to be paid out of a trust fund or estate where his services have aided in creating, preserving, or protecting the fund or estate. 7 C.J.S., Attorney and Client, § 193(2). But in probate matters, "The general rule is that no allowance may be made out of the estate of a deceased person for the services of an attorney not employed by the personal representative of the estate, where the services were rendered for the sole benefit of an individual or group of individuals interested in the estate." 79 A.L.R. 522. See annotation, ibid, beginning at page 521, and supplemental annotation in 142 A.L.R. 1459. Also see 21 Am.Jur., Executors and Administrators, section 548.
Admittedly, the attorneys representing the acting Polish Consul were not employed by the executor to perform any services for the estate, and even if it were a fact that their services might have in some way incidentally or even substantially benefited the estate, under what we consider to be the better rule (though there is respectable authority *Page 380 
to the contrary), no payment from the estate funds could be allowed them. We are in full agreement with the following language used in a similar situation by the court in In re Harrison's Estate, 221 Pa. 508, 70 A. 827, "We regard this as a most salutary rule, and not to be entrenched upon or impaired in any way. To do so would be to open the door to great abuses. * * *" "* * * To hold otherwise would be to make an estate liable for expenses and costs which could not be controlled or measured by an administrator or executor, and invite confusion, if not absolute waste, in the settlement of estates. * * *" In re Heeney's Estate, 3 Cal.App. 548, 86 P. 842, 844.
In addition to the cases from other jurisdictions in support of our view cited in the annotations in 79 and 142 A.L.R., supra, see In re Feldman's Estate, 78 Cal.App.2d 778, 178 P.2d 498; In re Mundt's Estate, 169 Wn. 593, 14 P.2d 59.
We consider further that this matter is governed by statute, the pertinent portion of the applicable section reading: "Allowed expenses of administration — Attorneys' fees. — * * * He (the executor) shall also be allowed reasonable fees paid or contracted to be paid to attorneys at law for services to him, and an attorney who has rendered such services may apply to the court for an allowance as compensation therefor. Upon the hearing, a reasonable allowance shall be made, and the court shall order the payment thereof out of funds of the estate." Section 38-1402, A.C.A. 1939.
It is a well recognized principle that the administration of a decedent's estate is purely statutory, and the procedure outlined in the statutes is controlling. The Consul has not pointed out any statutory provision that authorizes the allowance of fees to his attorneys. Impliedly, section 38-1402, supra, limits the payment of attorney's fees to those who are employed by the executor. The rationale of our decision in Ellsworth v. Struckmeyer, 27 Ariz. 484, 232 P. 56, is to this same effect. See Carpenter v. Lothringer, 224 Iowa 439, 275 N.W. 98, at page 106.
We hold that the allowance of fees to these attorneys for their services in representing the Consul and Polish Nationals was not an allowable expense of administration. The order was improvidently entered and must be set aside.
Cross-Appeal of the Consul General.
To properly understand the matters raised by the cross-appeal of the Polish Consul it is necessary that we recite in some detail certain of the proceedings had in the administration of this estate. On July 8, 1946, executor Byrd filed his final account and report and petition for distribution, to which the Consul filed his objections. A hearing was thereafter had, resulting in an order dated January 25, 1947, that: (a) approved said final account and report; (b) made allowances to the *Page 381 
executor and his attorney for all services rendered to the estate, both special and general; (c) denied the petition to waive and cancel the claim and lien of said estate against the widow Elsa Balke McNamara; and (d) purportedly made distribution in these words, viz:
"It Is Further Ordered that said executor forthwith make distribution to the said Stefan Rogozinski, as said Polish Consul of the distributive legacies and shares of the said Karl Brandt, Marie Gutekunst and Martha Zaft, and that said executor make distribution to the proper persons of the other legacies and distributive shares as provided in said Will.
"It further appearing to the court that it is necessary that the estate adjust the matter of taxes, both State and Federal, and that the residuary assets of the estate, after payment of all specific legacies, cannot be distributed until such taxes and all charges against the estate have been paid and the net amount remaining in the hands of the executor has been ascertained.
"Now, Therefore, It Is Further Ordered, that the executor, L.M. Byrd, immediately after the payment to himself and to his attorney, of their said fees, and payment of said legacies and distributive shares, secure full adjustment and release of such taxes and report the net amount remaining in his hands into court to the end that final distribution may be made of the net amount remaining in the hands of the executor as residuary assets of the estate."
On January 31, 1947, a motion to modify and set aside that part of this order which decreed the distribution to Consul Rogozinski of the legacies of the Polish Nationals was filed by the executor. The motion was based on the ground that if the money was paid to the Acting Polish Consul, in the light of the critical posture of world events the legatees would probably be deprived of their interest in said legacies, and the wishes and purposes of the testator would be frustrated. It was further alleged that at the time of entry of said order one of the Polish Nationals, Marie Gutekunst, was deceased, having died in December, 1946, On February 25, 1947, Karl Brandt and Martha Zaft, two of the Polish Nationals, appearing through their attorney F.C. Struckmeyer, filed a motion to vacate and set aside that part of this January order which directed their legacies to be paid to the Consul, and prayed that their legacies be deposited in a national bank of the United States, subject to their personal voluntary order, or in the alternative, invested in negotiable bonds of the United States in their name.
Also prior to the entry of this order, one William Paar had filed a petition in the estate asking that the shares of the Polish Nationals be distributed to him as their attorney in fact, and on February 25, 1947, his counsel applied for a continuance of the hearing on this petition. Neither the Paar petition nor the motion for continuance *Page 382 
was heard or determined until the final hearing held September 30, 1947.
On September 30, 1947, executor Byrd filed a supplemental account and report in which for the first time there appears a schedule showing precisely the amount due under the will of deceased to each of the nine legatees, interest at six percent from March 30, 1932 to date (amounting to nearly as much as the principal) having been added in accordance with the provisions of the will. A petition by the Consul for an allowance of $7,500 attorneys' fees to his attorneys was also filed September 30, 1947, and, all parties being present, a hearing was then had upon all of said matters. At this time Herman Lewkowitz, attorney for Elsa Balke McNamara, orally moved the court to reconsider the matter of waiving the secured debt owed by her to the estate. An order and amendment to the decree of distribution was thereupon entered (dated September 30, 1947). This order (1) approved the supplemental account and report; (2) granted the petition of the Polish Consul for fees to his attorneys; (3) denied the William Paar petition for distribution to him of the legacies and interests of the three Polish Nationals; and (4) directed the executor to make distribution to the proper persons of the other legacies and distributive shares as provided in said will. Moreover, in two particulars, the court in effect vacated and set aside certain portions of the order of January 25, 1947, for (5) it ordered that the estate's claim and lien against Elsa Balke McNamara be waived, cancelled and set aside, and (6) that the distributive shares of the three Polish Nationals theretofore directed to be made to the Consul be now made as follows: "* * * distribution of the legacies and shares of the said Karl Brandt and Martha Zaft in said estate are hereby ordered to be made to the said Louis M. Byrd as their attorney in fact; and that distribution of the legacies and share of Marie Gutekunst, deceased, in said estate be made to her estate upon an administrator being duly appointed therein; * * *."
The court expressly found that at the time of the entry of the earlier order (January 25, 1947) Marie Gutekunst was deceased, and that since that date heirs Karl Brandt and Martha Zaft had appointed Louie M. Byrd as their attorney in fact. The Treaty of Friendship, Commerce and Consular Rights between the United States of America and the Republic of Poland (proclaimed by the President of the United States on July 10, 1933; Treaty Series, No. 862, 48 Statutes at Large, Part 2, 1507) and a license issued September 22, 1943, by the United States Treasury Department (Foreign Fund Control) authorize the Polish Consul to appear for and receive the distributive shares of Polish Nationals in estates being administered in this country. However, such authorization can be terminated by the *Page 383 
appointment of another to represent such nationals.
The cross-appeal is from those portions of the order and amendment to the decree of distribution of September 30, 1947, covered by items numbered 1, 5, and 6, supra.
By appropriate assignments of error the Consul urges that the various orders and the decree dated January 25, 1947, purportedly distributing the assets of said estate, were appealable orders, and as no appeal was taken therefrom, they became final and conclusive. He contends that the matter is now res judicata, and that the court was without jurisdiction to enter those portions of the September order and decree which purported to forgive and cancel the estate's claim against the widow and directed distribution of the Polish Nationals' legacies to Louie M. Byrd as attorney in fact rather than to the Polish Consul.
While it is customary and proper probate practice to combine into one pleading the final account and report and petition for distribution (as was done in this case) and, after a hearing is had, to include in one document the decree of distribution and the necessary orders approving of the matters covered in the final accounting, section 38-1311, A.C.A. 1939, still the two matters are separate and distinct and must be treated as such in law. 2 Cal.Jur., Appeal and Error, section 47.
Unquestionably those portions of the order of January 25, 1947, which were directly related to the final accounting of the executor, such as the approval of said account and report, the allowance of fees to both the executor and his counsel, and the denial of the petition to waive and cancel the estate's claim against the widow, from none of which an appeal was taken, did become final and conclusive, and hence the court was without jurisdiction to later reverse its position as to any of these matters. Section 38-1313, A.C.A. 1939; In re Sullivan's Estate,51 Ariz. 483, 78 P.2d 132; Shattuck v. Shattuck, 67 Ariz. 122,192 P.2d 229; In re Doane's Estate, 64 Wn. 303, 116 P. 847. We therefore hold that insofar as the September order purports to forgive and cancel the estate's claim against the widow, it is null and void, and must be set aside as having been entered without jurisdiction.
A different situation exists, however, as to the finality of the purported order of distribution of the estate made on January 25, 1947, as heretofore set forth haec verba. As we interpret the record before us, the order itself could not have been nor was it deemed to be a final decree for the reason that the estate was not then ready for closing. It will be noted that this order required the executor to secure full adjustment and release of taxes and to report the net amount remaining in his hands into court "to the end that final distribution may be made. * * *" The statute, section 38-1505, A.C.A. 1939, expressly provides: "Decree *Page 384 
of distribution — Payment of taxes. — In the decree the court shall name the persons and the proportions or parts to which each shall be entitled, and such person may demand, sue for, and recover his share from the executor or the administrator, or any person having the same in possession. Such decree is conclusive of the rights of heirs, legatees or devisees, subject only to appeal. A decree of distribution shall not be entered until the state, county and municipal taxes levied upon the property of the estate, have been fully paid."
The attitude of the Consul is itself indicative of the fact that he did not consider the January order as being a final decree of distribution. He appeared in court on February 11th and procured an order requiring the executor to post an additional bond in the sum of $100,000, and then the following September applied for an allowance of attorney's fees from the estate for his counsel, who he stated were still rendering services that were of benefit to the estate. Such appearances and petitions were certainly not based upon any assumption that the court by its order had finally distributed the estate. Furthermore, there still remained undisposed of the Paar petition, the objection and motion to modify the order of distribution filed January 31, 1947, by the executor, and the objection to the order and request for alternative distribution filed on behalf of Karl Brandt and Martha Zaft on February 25, 1947. The court's delay in ruling upon these various and sundry motions and petitions which were timely filed did not prejudice the rights of the moving party nor divest the court of jurisdiction to later pass thereon. In re Estate of Hayward, 63 Ariz. 1, 159 P.2d 307. The January order cannot be viewed, nor is such an argument presented, as a partial distribution of the legacies in question. The statutory method for partial distribution is exclusive. Section 38-1501, A.C.A. 1939; In re Sullivan's Estate, supra. Our statutes contemplate a single final decree of distribution, and such final decree cannot be handled on a piecemeal basis.
Our conclusion is, and we so hold, that as to the distribution phase of the case the Consul's position is untenable, the order in question being interlocutory and not appealable. The trial court did, therefore, have jurisdiction on September 30, 1947, to make such distribution of the estate as it then deemed proper.
The Consul raises the further objection that the showing below was insufficient to support the court's action in vacating its original order and directing distribution to Louie M. Byrd, attorney in fact, of the shares of the Polish Nationals. But the recital within the order and decree of September 30th "evidence both oral and documentary having been submitted to the court" cannot be ignored. We cannot question the sufficiency of the evidence to sustain this decree as no transcript of this *Page 385 
hearing is before us. We must assume on this state of the record that the evidence sustained the order rendered. Julian v. Carpenter, 65 Ariz. 157, 176 P.2d 693. The burden rested upon the Consul as cross-appellant to produce the transcript upon which his objection was based.
Were it not for a basic defect in this final decree, which is not cured by a reference therein to the terms of the will, we would affirm the distribution as made to Louie M. Byrd on behalf of the Polish Nationals. Section 38-1505, supra, expressly provides that "In the decree the court shall name the persons and the proportions or parts to which each shall be entitled, * *." The September decree made no pretense, nor did that of the preceding January after which this portion of it was patterned, of complying with this provision. There is no determination within the four corners of the decree of those who are the legatees nor of the proportions or parts to which they are entitled. Nor does the final decree make mention of the fact that two legatees in addition to Marie Gutekunst have died during the two decades since the administration of this estate was commenced.
Upon our own motion we take this opportunity to condemn the loose manner in which this decree was drafted. It is only by setting forth with particularity in the final decree the interests which each legatee acquires that a probate court can properly follow the mandate of such a statute. In Shattuck v. Shattuck, supra, [67 Ariz. 122, 192 P.2d 234], this court said in referring to the requirements of this section, 38-1505, supra, among others, "These are positive duties imposed by statute upon the Superior Court sitting in probate * * *." See Sharpe v. Sharpe, 164 Kan. 484, 190 P.2d 344; Wells Fargo Bank Union Trust Co. v. Superior Court, 32 Cal.2d 1, 193 P.2d 721; In re Spreckels' Estate, 165 Cal. 597, 133 P. 289; Bell v. Wilson,159 Cal. 57, 112 P. 1100; Case v. Clark, 220 Mass. 344, 107 N.E. 936; 21 Am.Jur., Executors and Administrators, sections 485 488 and 1948 Cumulative Supplement, page 42, section 485; 34 C.J.S., Executors and Administrators, § 526. The reason for this requirement is obvious. The distributees and the heirs should not be left in a situation where they have to find out for themselves as best they can what has been awarded to them.
We reiterate our conclusion as to the executor's appeal that the order of the trial court in allowing $7,500 in fees to the attorneys representing the Polish Consul should be reversed. On the cross-appeal the order of September 30, 1947, purportedly forgiving and cancelling the estate's claim against Elsa Balke McNamara is reversed, and the so-called "amended decree of distribution" is also set aside with directions that a proper decree of distribution be forthwith entered in accordance with the views expressed in this opinion. Each party to this appeal shall bear his own costs.
Reversed with directions. *Page 386 
STANFORD and DE CONCINI, JJ., and JOHNSON and THALHEIMER, Superior Judges, concurring.
Chief Justice LaPRADE being ill and Justice PHELPS having disqualified, the Honorable J. MERCER JOHNSON, Judge of the Superior Court of Pima County, and the Honorable WALTER J. THALHEIMER, Judge of the Superior Court of Maricopa County, were called to sit in their stead.